1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   STEVEN MICHAEL MEDLYN,

11            Petitioner,                No.  2: 11-cv-0898 TLN DAD P

12       vs.

13   R. BARNES, Warden,

14            Respondent.              ORDER AND

15                                     FINDINGS & RECOMMENDATIONS

16   _____/

17                          I.  INTRODUCTION

18            Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas

19   corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction entered

20   against him following a jury trial in the Nevada County Superior Court on charges of first-degree

21   murder and first degree burglary.  He was convicted on those charges and was subsequently

22   sentenced to a term of twenty-five years to life imprisonment on the murder conviction plus a

23   consecutive six-year sentence for the burglary conviction.  In his federal habeas petition pending

24   before this court petitioner raises the following three claims:  (1) the prosecutor at his trial

25   committed error under Doyle v. Ohio, 426 U.S. 610 (1976) by impeaching petitioner's testimony

26   with his invocation of his right to remain silent ("Claim I"); (2) he received ineffective assistance

                                     1

of trial counsel who failed to adequately press the issue of <u>Doyle</u> error at his trial ("Claim II");

and (3) the sentencing court erred in imposing an upper term, consecutive  sentence on the

burglary conviction in violation of his constitutional rights ("Claim III").  For the reasons set

forth below, the undersigned will recommend that federal habeas relief be denied.

II.  FACTUAL BACKGROUND[1]

Mary Spratt's body was discovered on her bathroom floor by her neighbor.  She had a dog leash wrapped around her neck and cuts on the back of her head.  A later autopsy revealed the cause of death was ligature strangulation, and that Spratt also had suffered blunt force trauma as evidenced by two broken ribs, hemorrhaging throughout the body, lacerations on the back of the head, and contusions on the head, torso and limbs.  Her blood contained a lethal concentration of Fentanyl, but because of her chronic use of pain medication, she may have developed a tolerance for the drug.

Spratt was 75 at the time of her death, and suffered from severe crippling rheumatoid arthritis and chronic lymphocytic leukemia. She had been prescribed a variety of pain medications, including Darvocet, OxyContin and Fentanyl.

Defendant had known Spratt for several years.  He met her while he was working at a card room in Grass Valley.  Spratt's pastimes were playing cards and bingo.  Defendant and Spratt were friends, and he assisted her with chores.  Defendant and Spratt both took OxyContin, and would trade medicine when one or the other ran out.  On one occasion, about a year before the murder, defendant supplied Spratt with methamphetamine.  Spratt also purchased defendant's medications for him when he was having money problems.  Defendant was having money problems prior to Spratt's murder on May 3, 2007.  He lost his apartment in April, his vehicle had been repossessed, and he owed money.

Around the end of April, defendant and Spratt had a "falling out" when Spratt accused him of stealing medication and money from her.  Spratt made a police report, accusing defendant and his wife of stealing Fentanyl and $50 from her.  She told the officer she

---

[1]  The factual background is taken from the opinion of the California Court of Appeal for the Third Appellate District, dated January 21, 2010, which was filed with this court by respondent as Exhibit A to the answer.  (<u>See</u> Doc. No. 17.)  On appeal the state appellate court modified the judgment to reflect the twenty-five year to life sentence imposed on the first degree murder conviction and remanded for a determination of petitioner's ability to pay the cost of the presentence report, but in all other respect affirmed petitioner's judgment of conviction.  (<u>Id</u>. at 16-17.)

believed defendant had previously stolen OxyContin from her, though she had not reported it.

Spratt's neighbor, Gloria Casselli, heard her come home around 10:20 p.m.  A minute or two after Spratt came home, Casselli heard a fairly loud bump coming from Spratt's apartment, as if something had fallen over.  It was followed by three other bumps that were not as loud.  Casselli also heard a voice that she thought was male.  Casselli went to her front door and listened for a few minutes to make sure Spratt was not calling for help.  When she did not hear anything, she went back to bed.

The next morning around 10:30 or 11:00 there was a woman knocking at Spratt's door.  When no one answered, Casselli went inside from the back door, and discovered Spratt lying face down in the doorway of the bathroom.  The police found everything in the apartment to be in order, except that Spratt's purse was missing.

On July 5, 2007, police executed a search warrant at the home of defendant's mother in law, which was where defendant had resided since April.  During the search, police discovered Spratt's purse.  It contained a money order, a set of keys, a bill, a wallet with photographs and various cards, a pain patch, an address book, a comb, a pack of gum, a bingo card, and a Social Security check, but no cash.

The dog leash that was used to strangle Spratt yielded both male and female DNA.  The female DNA profile was the same as Spratt's profile.  Statistically, the male DNA matched one in 39 Caucasians, including defendant.

(Resp't's Answer, Ex. A (Doc. No. 17) at 2-4.)

### III.  PROCEDURAL HISTORY

Petitioner appealed his judgment of conviction to the California Court of Appeal after his sentencing.  Among the issues raised on appeal were the issues petitioner raises in this federal habeas petition.  On all issues relevant to these federal habeas proceedings the California Court of Appeal rejected petitioner's arguments.[2]  Petitioner then filed a petition for review in the California Supreme Court.  The California Supreme Court summarily denied the petition for review on March 30, 2010.  (See Resp't's Lodged Doc. 8.)

_____

[2] See fn. 1, above.

3

1    Petitioner subsequently delivered the instant federal habeas petition to prison

2  officials for mailing on March 26, 2011.[3]  Respondent answered the petition in June 2011 and

3  petitioner filed a traverse in July 2011.

4         IV.  STANDARDS OF REVIEW APPLICABLE TO HABEAS CORPUS CLAIMS

5         An application for a writ of habeas corpus by a person in custody under a

6  judgment of a state court can be granted only for violations of the Constitution or laws of the

7  United States.  See 28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the

8  interpretation or application of state law.  See Wilson v. Corcoran, ___U.S.___, ___, 131 S. Ct.

9  13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146,

10  1149 (9th Cir. 2000).

11         Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal

12  habeas corpus relief:

13         An application for a writ of habeas corpus on behalf of a
       person in custody pursuant to the judgment of a State court shall
14         not be granted with respect to any claim that was adjudicated on
       the merits in State court proceedings unless the adjudication of the
15         claim -

16         (1) resulted in a decision that was contrary to, or involved
       an unreasonable application of, clearly established Federal law, as
17         determined by the Supreme Court of the United States; or

18         (2) resulted in a decision that was based on an unreasonable
       determination of the facts in light of the evidence presented in the
19         State court proceeding.

20         For purposes of applying § 2254(d)(1), "clearly established federal law" consists

21  of holdings of the United States Supreme Court at the time of the state court decision.  See

22  Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362,

23  405-06 (2000)).  Nonetheless, "circuit court precedent may be persuasive in determining what

24  law is clearly established and whether a state court applied that law unreasonably."  Stanley, 633

25  _____

26         [3]  The court deems this to be the date the pending petition was filed with this court
   pursuant to the mailbox rule announced in Houston v. Lack, 487 U.S. 266, 276 (1988).

4

F.3d at 859 (quoting <u>Maxwell v. Roe</u>, 606 F.3d 561, 567 (9th Cir. 2010)); <u>see also</u> <u>Clark v.</u>

<u>Murphy</u>, 331 F.3d 1062, 1070 (9th Cir. 2003) ("While only the Supreme Court's precedents are

binding   . . . and only those precedents need be reasonably applied, we may look for guidance to

circuit precedents.").

A state court decision is "contrary to" clearly established federal law if it applies a

rule contradicting a holding of the Supreme Court or reaches a result different from Supreme

Court precedent on "materially indistinguishable" facts.  <u>See</u> <u>Price v. Vincent</u>, 538 U.S. 634, 640

(2003).  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may

grant the writ if the state court identifies the correct governing legal principle from the Supreme

Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[4]  <u>See</u>

<u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003); <u>Williams</u>, 529 U.S. at 413; <u>Chia v. Cambra</u>, 360

F.3d 997, 1002 (9th Cir. 2004).  However, a federal habeas court

> may not issue the writ simply because that court concludes in its
> independent judgment that the relevant state-court decision applied
> clearly established federal law erroneously or incorrectly.  Rather,
> that application must also be unreasonable.

<u>Williams</u>, 529 U.S. at 412.  <u>See also</u> <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007); <u>Lockyer</u>,

538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal

question, is left with a 'firm conviction' that the state court was 'erroneous.'").  "A state court's

determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

jurists could disagree' on the correctness of the state court's decision."  <u>Harrington v. Richter</u>,

___U.S.___,___, 131 S. Ct. 770, 786 (2011) (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652,

664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a

state prisoner must show that the state court's ruling on the claim being presented in federal court

---

[4]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
presented in the state court proceeding."  <u>Stanley</u>, 633 F.3d at 859 (quoting <u>Davis v. Woodford</u>,
384 F.3d 628, 638 (9th Cir. 2004)).

1   was so lacking in justification that there was an error well understood and comprehended in

2   existing law beyond any possibility for fairminded disagreement."  Id. at 786-87.

3            If the state court's decision does not meet the criteria set forth in § 2254(d), a

4   reviewing court must then conduct a de novo review of a habeas petitioner's claims.  Delgadillo

5   v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735

6   (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply

7   because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition

8   by considering de novo the constitutional issues raised.").

9            The federal habeas court looks to the last reasoned state court decision as the basis

10  for the state court judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055

11  (9th Cir. 2004).  If the last reasoned state court decision adopts or substantially incorporates the

12  reasoning from a previous state court decision, this court may consider both decisions to

13  ascertain the reasoning of the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir.

14  2007) (en banc).  "When a federal claim has been presented to a state court and the state court

15  has denied relief, it may be presumed that the state court adjudicated the claim on the merits in

16  the absence of any indication or state-law procedural principles to the contrary."  Harrington, 131

17  S. Ct. at 784-85.  This presumption may be overcome by a showing "there is reason to think

18  some other explanation for the state court's decision is more likely."  Id. at 785 (citing Ylst v.

19  Nunnemaker, 501 U.S. 797, 803 (1991)).  Where the state court reaches a decision on the merits

20  but provides no reasoning to support its conclusion, a federal habeas court independently reviews

21  the record to determine whether habeas corpus relief is available under § 2254(d).  Stanley, 633

22  F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the

23  record is not de novo review of the constitutional issue, but rather, the only method by which we

24  can determine whether a silent state court decision is objectively unreasonable."  Himes, 336

25  F.3d at 853.  Where no reasoned decision is available, the habeas petitioner still has the burden of

26  /////

6

1   "showing there was no reasonable basis for the state court to deny relief." <u>Harrington</u>, 131 S. Ct.

2   at 784.

3          When it is clear, however, that a state court has not reached the merits of a

4   petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a

5   federal habeas court must review the claim de novo. <u>Stanley</u>, 633 F.3d at 860; <u>Reynoso v.</u>

6   <u>Giurbino</u>, 462 F.3d 1099, 1109 (9th Cir. 2006); <u>Chaker v. Crogan</u>, 428 F.3d 1215, 1221 (9th Cir.

7   2005); <u>Nulph v. Cook</u>, 333 F.3d 1052, 1056 (9th Cir. 2003).[5]

8                  V.  ANALYSIS OF PETITIONER'S CLAIMS

9      A.  Claim I - <u>Doyle</u> Error

10          In Claim I of the pending petition, petitioner asserts that the prosecutor at his trial

11   committed <u>Doyle</u> error when she elicited testimony from a detective regarding petitioner's

12   invocation of his right to remain silent.  The last reasoned decision addressing this contention

13   was that of the California Court of Appeal on direct appeal which, in rejecting the argument,

14   stated as follows:

15         On direct examination, Grass Valley police detective Douglas Hren
      testified that he was interviewing defendant before the search

16         warrant of defendant's residence was executed.  Near the end of
      the interview, Hren confronted defendant about being Spratt's

17         killer.  In reaction, defendant hung his head, turned pale, began
      perspiring, but denied he had been "there."

18

19         After the search warrant was executed and Spratt's purse had been
      found, Hren returned to defendant and told him he (defendant)

20         knew what had been found.  Defendant hung his head and said,
      "okay."  Defendant again turned pale and was upset, but did not
      seem surprised.  When he was told that he was going to be charged

21         with Spratt's murder, he started to retch and vomit.

22         Defendant testified in his own defense.  He stated his mother-in-
      law had a house alarm, but that he did not know the alarm code.

23         He stated that on the night of the murder he went to bed around
      9:00 or 9:30 p.m., and that he remembered his wife coming to bed

24

_____

25       [5]  The United States Supreme Court has recently granted certiorari in a case apparently to
consider this issue.  <u>See</u> <u>Williams v. Cavazos</u>, 646 F.3d 626, 639-41 (9th Cir. 2011), <u>cert.</u> <u>granted</u>

26   <u>in part</u>, ___U.S.___, 132 S. Ct. 1088 (2012).

that night around 10:30 or 11:00 p.m.  He stated that when Detective Hren told him he was being arrested for Spratt's murder, he was shocked and disbelieving.

In rebuttal, the prosecution called Detective Hren to the stand.  The prosecutor asked Hren how defendant had reacted to being accused of Spratt's murder.  Hren indicated defendant had never claimed to have been in bed asleep with his wife, but had merely indicated he "wasn't there."  Hren stated that after searching defendant's residence, he went back and asked defendant if he knew what had been found at the house.  Defendant answered, "I think so."  He was perspiring and looked uncomfortable.  The prosecutor asked again if defendant had mentioned his mother-in-law's alarm system.  Defense counsel objected to this question, and an unreported discussion took place.

The next day defense counsel argued the questions were Doyle error.  Doyle v. Ohio (1976) 426 U.S. 610 [49 L.Ed.2d 91] held that a defendant's post-arrest silence may not be used for impeachment.  Defense counsel stated she was not seeking a mistrial, although she recognized it was an option, but was instead asking for an instruction to the jury to disregard the testimony by Detective Hren, as well as an instruction that it was misconduct by the prosecutor to ask the question.  The trial court agreed to give an instruction telling the jury not to consider Hren's testimony, but refused to instruct the jury that the district attorney engaged in prosecutorial misconduct.  The trial court directed defense counsel to prepare an instruction informing the jury which portion of the testimony it wanted the jury to disregard.  Thereafter, the court instructed, "You are not to consider Detective Hren's testimony regarding Mr. Medlyn's post search warrant silence for any purpose."

Defendant now argues that the instruction was an inadequate remedy, and that the trial court should have declared a mistrial, even though defense counsel specifically made clear to the trial court that it was not requesting a mistrial.  Defendant has forfeited this issue by seeking and receiving a curative admonition, and seeking no other remedy.  "[A] defendant who receives a curative admonition, but who makes no other objection and seeks no other action, may not complain on appeal.  Defendant may not argue that the court should have granted a mistrial he did not request, and the strictures of double jeopardy could, in any event, severely restrict such an action.  (See generally People v. Upshaw (1974) 13 Cal.3d 29, 33 [117 Cal. Rptr. 668, 528 P.2d 756].)"  (People v. Chapman (2006) 38 Cal.4th 344, 368.)

Defendant argues the remedy was particularly inadequate in light of the prosecutor's attempt to exploit defendant's post-arrest silence during closing argument.  There was no exploitation of defendant's post-arrest silence during the prosecutor's closing

argument.  In closing the prosecutor argued that when he asked defendant if he knew what had been found during the search of his bedroom, defendant replied, "I think so."  Defense counsel objected, and after an unreported bench conference, the prosecutor resumed her argument.

This was not an attempt to exploit defendant's silence.  Defense counsel had made clear that she was not objecting to the admission of defendant's words, which the trial court indicated could be introduced to impeach defendant's testimony, but to the use of defendant's silence to impeach him.  The prosecutor's use of defendant's verbal response when confronted with what had been found in his bedroom was not an attempt to use his silence against him.

(Resp't's Answer Ex. A at p. 4-8.)

Respondent argues that petitioner's claim is procedurally defaulted and therefore barred from consideration in these federal habeas proceedings.  According to respondent, petitioner forfeited the ability to raise this issue because his trial counsel specifically declined to move for a mistrial but instead sought only a curative instruction to address the alleged prosecutorial misconduct.  Respondent argues this is akin to the contemporaneous objection rule and that trial counsel's failure to seek a mistrial therefore procedurally bars consideration of this claim in these federal habeas proceedings.

Because, for the reasons set forth below, the undersigned concludes that petitioner's claim of Doyle error is without merit, respondent's contention that petitioner's Claim I is procedurally barred need not be addressed.  See Lambrix v. Singletary, 520 U.S. 518, 525 (1997); Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same.").  The court now turns to the merits of petitioner's Doyle error claim.

A prosecutor may not impeach a defendant's testimony with the defendant's silence after he has been advised of and invoked his right to remain silent under Miranda v. Arizona, 384 U.S. 436, 444 (1966).  Doyle, 426 U.S. at 611; see also United States v. Caruto,

1   532 F.3d 822, 827 (9th Cir. 2008) ("Following Doyle, this court has held that a 'defendant who

2   has received Miranda warnings can, thereafter, remain silent without running the risk that the

3   prosecutor will comment on that fact.'") (quoting Leavitt v. Arave, 383 F.3d 809, 827 (9th Cir.

4   2004)).[6]   The Doyle rule is based on the assurance provided in the Miranda warnings that the

5   exercise of one's right of silence will not be penalized.   Doyle, 426 U.S. at 618-19; see also

6   Wainwright v. Greenfield, 474 U.S. 284, 295 (1986); Hurd, 619 F.3d at 1086.   However,

7
8
9

> Doyle does not apply to cross-examination that merely inquires
> into prior inconsistent statements.  Such questioning makes no
> unfair use of silence because a defendant who voluntarily speaks
> after receiving Miranda warnings has not been induced to remain
> silent.

10   Anderson v. Charles, 447 U.S. 404, 408 (1980).  See also Hurd, 619 F.3d at 1086.  Additionally,

11   the Supreme Court has held that there is no violation of Doyle if the trial court promptly sustains

12   a timely objection to a question concerning a defendant's post-arrest silence, instructs the jury to

13   disregard the question, and provides a curative jury instruction.  See Greer v. Miller, 483 U.S.

14   756, 765-67 (1987); see also United States v. Lopez, 500 F.3d 840, 844 (9th Cir. 2007); United

15   States v. Foster, 985 F.2d 466, 468 (9th Cir. 1993), as amended 995 F.2d 882 (9th Cir. 1993) and

16   17 F.3d 1256 (9th Cir. 1994).

17         "Doyle error does not entitle a petitioner to habeas relief unless the error 'had

18   substantial and injurious effect or influence in determining the jury's verdict.'"   Hurd v. Terhune,

19   619 F.3d 1080, 1089-90 (9th Cir. 2010) (quoting Brecht v. Abrahamson, 507 U.S. 619, 623

20   /////

21   /////

22   ───────────────────

23   [6] It is recognized that a suspect may rely on his right to remain silent selectively.
Miranda v. Arizona, 384 U.S. 436, 445 (1966).  Even conduct that is tantamount to silence, such
24   as a lack of physical or emotional reaction when confronted with evidence, is sufficient to invoke
the protections of the Fifth Amendment in this regard.  See United States v. Velarde-Gomez, 269
25   F.3d 1023, 1032-33 (9th Cir. 2001) (en banc).  Moreover, "[a] suspect may remain selectively
silent by answering some questions and then refusing to answer others without taking the risk
26   that his silence may be used against him at trial."  Hurd v. Terhune, 619 F.3d 1080, 1087 (9th
Cir. 2010).

1  (1993)).  See also Cook v. Schriro, 538 F.3d 1000, 1019 (9th Cir. 2008).[7]  This inquiry is

2  conducted de novo, "without the benefit of such aids as presumptions or allocated burdens of

3  proof."  Hurd, 619 F.3d at 1090 (quoting Mancuso v. Olivarez, 292 F.3d 939, 950 n.4 (9th Cir.

4  2002).  The inquiry called for in this context is as follows:

5           When the prosecutor's impermissible argument comments on a
             defendant's post Miranda silence, the court attempts to determine
6           not "whether the jury would have decided the same way even in the
             absence of the error," but "whether the error influenced the jury."
7           Arnold [v. Runnels], 421 F.3d [859] at 869 [(9th Cir. 2005)].  In
             making this determination, the court considers "(1) the extent of
8           [the] comments . . ., (2) whether an inference of guilt from silence
             was stressed to the jury, and (3) the extent of other evidence
9           suggesting [the] defendant's guilt."  United States v. Velarde
             Gomez, 269 F.3d 1023, 1034–35 (9th Cir. 2001) (en banc).

10

11 Hurd, 619 F.3d at 1090.  See also United States v. Bushyhead, 270 F.3d 905, 913 (9th Cir.

12 /////

13 /////

14 _____

15         [7]  Of course, it is well-established that a criminal defendant's due process rights are
    violated if prosecutorial misconduct renders a trial "fundamentally unfair."  Drayden v. White,
16 232 F.3d 704, 713 (9th Cir. 2000) (citing Darden v. Wainright, 477 U.S. 168, 183 (1986)).  A
    federal habeas petition will be granted due to prosecutorial misconduct when the misconduct "so
17 infected the trial with unfairness as to make the resulting conviction a denial of due process."
    Darden, 477 U.S. at 181 (internal quotation marks and citation omitted).  It it is the case that
18 under some circumstances "[a] determination that the prosecutor's questioning was improper is
    insufficient in and of itself to warrant reversal."  Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir.
19 1998).  However, isolated improper comments by a prosecutor may be adequately cured by jury
    instructions.  See Sassounian v. Roe, 230 F.3d 1097, 1106-07 (9th Cir. 2000); see also Hall v.
20 Whitley, 935 F.2d 164, 165-66 (9th Cir. 1991) ("Put in proper context, the comments were
    isolated moments in a three day trial.")  Thus, in assessing prosecutorial misconduct claims in
21 general it has been recognized that some of the factors to consider in determining the prejudicial
    effect of a prosecutor's misconduct include:  (1) whether a curative jury instruction was given,
22 see Greer v. Miller, 483 U.S. 756, 766 n.8 (1987); (2) the weight of evidence of guilt, compare
    United States v. Young, 470 U.S. 1, 19 (1985) (finding "overwhelming evidence" of guilt), with
23 United States v. Schuler, 813 F.2d 978, 982 (9th Cir. 1987) (requiring a new trial where the
    prosecutor in front of the jury referred to the defendant's courtroom demeanor, in light of prior
24 hung jury in the case and the lack of a curative jury instruction); (3) whether the misconduct was
    isolated or part of an ongoing pattern, see Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir. 1987); (4)
25 whether the prosecutorial misconduct related to a critical aspect of the case, see Giglio v. United
    States, 405 U.S. 150, 154 (1972); and (5) whether the challenged comment of the prosecutor
26 misstated or manipulated the evidence.  See Darden, 477 U.S. at 181-82.

2001).[8]

Here, petitioner asserts that <u>Doyle</u> error occurred when the prosecutor recalled Detective Hren to the stand as part of the prosecution's rebuttal case and, according to petitioner, questioned the detective regarding petitioner's post-<u>Miranda</u> silence.  More specifically, petitioner argues that the following examination of Detective Hren by the prosecutor constituted <u>Doyle</u> error:

> Q:  When you returned to the Wayne Brown Correctional Facility, you spoke with the defendant again briefly?
>
> A:  That's correct.
>
> Q:  Did you tell him what you had found at the residence?
>
> A:  I put it to him in a question first.  Asking him if he knew what I found in his bedroom.
>
> [Petitioner's trial counsel]:  I'm going to object at this time, Your Honor.  This has been asked and answered.
>
> THE COURT:  I think it's fair rebuttal given the defense presentation.  Overruled.
>
> Q:  Did he react to that question.
>
> A:  Yes.
>
> Q:  What did he react by doing?
>
> A:  He said "I think so."
>
> Q:  How did he seem when he said, "I think so."
>
> A:  Started perspiring and looked down.  Swallowed.
>
> Q:  Did he look comfortable?

---

   [8]  A prosecutor's statement challenged based upon the holding in <u>Doyle</u> must also be evaluated in the context of the entire trial, as well as the context in which it was made.  <u>See Boyde v. California</u>, 494 U.S. 370, 384-85 (1990); <u>see</u> also <u>Ybarra v. McDaniel</u>, 656 F.3d 984, 999 (9th Cir 2011) (Noting that in <u>United States v. Young</u>, 470 U.S. 1 (1985) the Supreme Court "held that inappropriate prosecutorial comments do not necessarily warrant reversal but rather 'must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error.'")

1    A:  No.

2    Q:  Did he bring up anything at that point about his alibi being with
     his wife, child and mother-in-law?

3
4    A:  Never.

5    Q:  Did he bring up the elaborate alarm system then?

6    A:  No.

7    [Petitioner's trial counsel]:  Objection, Your Honor.  May we
     approach?

8    (Resp't's Lodged Doc. 3 (Doc. No. 16), Reporter's Transcript on Appeal (hereinafter "RT") at

9    1075-76.)

10           The final two questions posed by the prosecutor to the detective and quoted

11   above, clearly focused on petitioner's silence.  In assessing whether the prosecutor's asking of

12   these challenged questions had a substantial and injurious effect or influence in determining the

13   jury's verdict, however, they must be viewed in the context of the entire trial.  See Boyde, 494

14   U.S. at 384-85; Ybarra, 656 F.3d at 999.  The first important factor to consider is whether the

15   trial court gave the jury a curative instruction following the defense objection to this questioning

16   which implicated the defendant's silence.  In this case, the trial court heard argument from the

17   parties following defense counsel's objection.  The following day, the trial court determined that

18   it would give a curative instruction to the jury.  Thereafter, the trial court instructed the jury as

19   follows:

20           You have heard evidence that defendant made a statement to a
             peace officer.  I am referring to the statement about which Sgt.
21           Doug Hren testified.  If you conclude that the defendant made this
             statement, you may consider it only to help you decide whether to
22           believe the defendant's testimony.  You may not consider it as
             proof that the statement is true or for any other purpose.  You
23           should view an unrecorded oral statement cautiously.

24           You are not to consider Detective Hren's testimony regarding Mr.
             Medlyn's post search warrant silence for any purpose.
25

26   (Rep.'s Tr. on App. at 1144.)  Thus, the jury at petitioner's trial was specifically given a curative

                                            13

1   instruction by the court that it was not to consider petitioner's silence, as testified to by Detective

2   Hren, for any purpose.  Accordingly, this factor favors a finding that no prejudice stemmed from

3   the prosecutor's challenged questions in this case.

4           Second, the weight of evidence against petitioner must be considered.  While the

5   evidence introduced against petitioner at trial was not necessarily overwhelming, neither was the

6   case against him a weak one.  Perhaps the most damaging evidence introduced at trial against

7   petitioner was that after the killing the victim's purse was found in his bedroom inside a green

8   "rodeo type" bag.  (Id. at 484.)  Furthermore, inside the victim's purse was a money order from

9   Raley's dated May 2, 2007, - the day before the victim had been killed.  (Id. at 487.)  Thus, the

10  purse found in petitioner's bedroom contained documents created near the time of the victim's

11  death.  Additionally, the purse contained many other personal effects of the victim, Mary Spratt,

12  such as her wallet and keys.  (Id. at 493-94.)

13          Petitioner testified in his own defense at trial.  He testified that he simply had "no

14  idea" how Spratt's purse had gotten into his bedroom.  (Id. at 999.)  Notably, the DNA evidence

15  admitted at his trial certainly did not eliminate petitioner as a suspect in the killing.  In this

16  regard, the male DNA found on the leash used to strangle Mary Spratt was consistent with

17  petitioner's DNA and, according to trial testimony, occurred in only one in thirty-nine Caucasian

18  males, one in sixty-seven African-American males and one in forty-one Hispanic males.  (Id. at

19  896-97.)  Therefore, the strength of the evidence presented against petitioner at his trial also fails

20  to support a finding of prejudice stemming from the challenged examination of Detective Hren

21  by the prosecutor.  See Brecht, 507 U.S. at 639

22          Next, the prosecutor's purported misconduct was limited to a mere two questions

23  asked of a single witness during the course of petitioner's lengthy trial.  See Brecht, 507 U.S. at

24  639 (holding that Doyle error did not influence the jury because the prosecution's references to

25  the defendant's post-Miranda silence was infrequent and comprised fewer than 2 pages of the

26  900 page trial transcript).  Moreover, that two questions at issue here were not part of an ongoing

14

1   pattern of misconduct engaged in by the prosecutor throughout petitioner's trial.[9]  Thus,

2   consideration of this factor also does not support a finding of prejudice flowing from the alleged

3   prosecutorial misconduct.

4          Finally, it is true that the prosecutor's objectionable questioning of Detective Hren

5   related to a critical aspect of the case.  Specifically, the two questions at issue focused in on

6   petitioner's purported alibi and the issue of why petitioner had not previously mentioned the

7   alarm system at his mother-in-law's house.  However, the fact that the two objectionable

8   questions posed by the prosecutor regarding petitioner's post-arrest silence focused on an

9   important aspect of the defense case does not alone support a finding of prejudice.

10          Assuming *arguendo* that the prosecutor's two questions posed to Detective Hren

11   during the prosecution's rebuttal case in fact constituted <u>Doyle</u> error, upon considering the

12   applicable factors cited above, the undersigned concludes that petitioner was not prejudiced as a

13   result of any such error.  Accordingly, he is not entitled to federal habeas relief with respect to his

14   <u>Doyle</u> error claim.  In reaching this conclusion, the court is persuaded by the following.  The two

15   questions at issue were isolated and not part of an ongoing pattern of prosecutorial misconduct at

16   trial.  Upon the raising of the defense objection, the trial court gave a curative instruction

17   specifically directing the jury that it was not to consider petitioner's silence for any purpose.

18   Furthermore, while the two questions related to a critical aspect of the case - petitioner's alibi

19   defense - the other evidence introduced at trial heavily implicated petitioner as Mary Pratt's

20   killer.  Considered in their totality, these factors outweigh the fact that the two challenged

21   questions at issue were focused on an important aspect of petitioner's defense.

22          Finally, petitioner also contends that the prosecutor committed <u>Doyle</u> error during

23   his closing argument to the jury.  Specifically, in his traverse, petitioner asserts that the trial

24   court's remedy of giving a curative instruction to the jury was especially insufficient in light of

25

26          [9]  For the reasons discussed below, petitioner's contention that the prosecutor also
    committed <u>Doyle</u> error in her closing argument to the jury is without merit.

1  the prosecutor's attempt during her closing argument to exploit petitioner's silence.  Petitioner

2  cites to the following excerpt from the prosecutor's closing argument in support of his

3  contention:

4          The most important part of course comes to where the purse is
        found.  And that would be in the mess of a bedroom that Steve and
5          Dawn Medlyn shared at Linda Davidson's house.  We note that
        when confronted with the charge of murder, Mr. Medlyn said, "I
6          think so."

7  (RT at 1164.)  Petitioner's trial counsel objected to this statement by the prosecutor in her closing

8  argument, asserting that, "[t]his was subject to a limiting instruction . . ." (Id.)  After the trial

9  judge held a side bar conference, the prosecutor continued with her closing argument without

10  further comment.

11          As noted by the state appellate court in rejecting petitioner argument on this issue,

12  this challenged aspect of the prosecutor's closing argument on its face was not an attempt to use

13  petitioner's silence against him.  Rather, it was an attempt to convince the jury to use petitioner's

14  own words against him.  See Anderson, 447 U.S. at 408; Hurd, 619 F.3d at 1086.  Because this

15  aspect of the prosecutor's closing argument was not in violation of the holding in Doyle,

16  petitioner's contention that he is entitled to federal habeas relief on this ground must be rejected.

17          For all of these reasons, petitioner is not entitled to federal habeas relief with

18  respect to any aspect of his Claim I in which he alleges Doyle error.

19      B.  Claim II

20          In Claim II, petitioner asserts that his trial counsel provided ineffective assistance

21  because she did not move for a mistrial based on the alleged Doyle error addressed above.  The

22  California Court of Appeal provided the last reasoned decision addressing this issue and analyzed

23  it as follows:

24          Defendant argues his trial attorney rendered ineffective assistance
        of counsel when she failed to request a mistrial.  We disagree.
25          "The law regarding claims of ineffective assistance of counsel is
        settled.  Defendant must show that counsel's performance was both
26          deficient and prejudicial, i.e., that it is reasonably probable that

16

1   counsel's unprofessional errors affected the outcome.  [Citations.]
2   We have also said that if the record sheds no light on why counsel
    acted or failed to act in the challenged manner, we must reject the
    claim on appeal unless counsel was asked for an explanation and
3   failed to provide one, or there could be no satisfactory explanation
    for counsel's performance.  [Citations.]"  (People v. Castillo
4   (1997) 16 Cal.4th 1009, 1014-1015.)

5   We reject defendant's claim because defense counsel did not fail to
    provide a requested explanation, and there could be a satisfactory
6   explanation for requesting an admonition, rather than a mistrial.
    Defense counsel may have believed that the trial court's curative
7   instruction was sufficient.  The jury is presumed to follow the
    court's admonition not to consider evidence.  (People v. Avila
8   (2006) 38 Cal.4th 491, 574.)  Defense counsel also may have
    believed the trial was going well, and that defendant would not do
9   better in a second trial.  Trial counsel is best able to determine
    proper tactics by gauging the jury's reaction to the proceedings,
10  and a reviewing court will not second guess tactical decisions
    except in rare cases.  (People v. Barnett, (1998) 17 Cal.4th 1044,
11  1140.)

12  (Resp't's Answer, Ex. A at 8-9.)

13          The Sixth Amendment guarantees effective assistance of counsel.  In Strickland v.

14  Washington, 466 U.S. 668 (1984), the Supreme Court articulated the test for demonstrating

15  ineffective assistance of counsel.  First, the petitioner must show that considering all the

16  circumstances, counsel's performance fell below an objective standard of reasonableness.

17  Strickland, 466 U.S. at 688.  Petitioner must identify the acts or omissions that are alleged not to

18  have been the result of reasonable professional judgment.  Id. at 690.  The federal habeas court

19  must then determine whether in light of all the circumstances, the identified acts or omissions

20  were outside the range of professional competent assistance.  See id.; Wiggins v. Smith, 539 U.S.

21  510, 521 (2003).  "There is a strong presumption that counsel's performance falls within the

22  'wide range of professional assistance.'"  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986)

23  (quoting Strickland, 466 U.S. at 689).  There is in addition a strong presumption that counsel

24  "exercised acceptable professional judgment in all significant decisions made."  Hughes v. Borg,

25  898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).  See also Harrington, 131

26  S. Ct. at 787-88 ("When 2254(d) applies, the question is not whether counsel's actions were

17

1    reasonable. The question is whether there is any reasonable argument that counsel satisfied

2    Strickland's deferential standard.").

3         Second, a petitioner must affirmatively prove prejudice.  See Strickland, 466 U.S.

4    at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's

5    unprofessional errors, the result of the proceeding would have been different." Id. at 694.  A

6    reasonable probability is "a probability sufficient to undermine the confidence in the outcome."

7    Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir.

8    2000).  "The likelihood of a different result must be substantial, not just conceivable."

9    Harrington, 131 S. Ct. at 792.  Finally, a reviewing court "need not determine whether counsel's

10   performance was deficient before examining the prejudice suffered by defendant as a result of the

11   alleged deficiencies . . . [i]f it is easier to dispose of an ineffectiveness claim on the ground of

12   lack of sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949,

13   955 (9th Cir. 2002) (citing Strickland, 466 U.S. at 697).

14        Here, petitioner has failed to show that the California Court of Appeal's decision

15   rejecting his ineffective assistance of counsel claim resulted in a decision that was contrary to, or

16   an unreasonable application of clearly established federal law.  This is not a case where trial

17   counsel sat idly by while the prosecutor purportedly asked questions about petitioner's post-arrest

18   silence.  Instead, petitioner's trial counsel objected when the prosecutor made a brief inquiry of a

19   witness touching on petitioner's silence and sought a curative jury instruction as previously

20   described.  Furthermore, petitioner's trial counsel was aware that she could move for a mistrial,

21   but ultimately made the tactical decision to instead request a curative jury instruction.  (See RT at

22   1091) ("Well, I think the court has two options.  I think the court can declare a mistrial based on

23   prosecutorial misconduct . . . .  I'm asking for an instruction to the jury that they're to disregard

24   all of that testimony by Detective Hren as well as instruction that it was misconduct that brought

25   it up.").

26   /////

Under these circumstances, the state appellate court's determination that it was not to second guess trial counsel's tactical decision was not an unreasonable application of clearly established federal law as set forth in <u>Strickland</u> and its progeny.  <u>See</u> e.g., <u>Strickland</u>, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"); <u>Mancuso v. Olivarez</u>, 292 F.3d 939, 954 (9th Cir. 2002) ("We will not second-guess such decisions or use hindsight to reconstruct the circumstances of counsel's challenged conduct."); <u>Guam v. Santos</u>, 741 F.2d 1167, 1169 (9th Cir. 1983) ("A tactical decision by counsel with which the defendant disagrees cannot form the basis of a claim of ineffective assistance of counsel.")  As noted above, petitioner's trial counsel expressed on the record her awareness that she could move for a mistrial but made the tactical decision to instead request a curative jury instruction which was in fact given by the court.[10]

Accordingly, petitioner is not entitled to federal habeas relief with respect to his Claim II in which he alleges that he received ineffective assistance of trial counsel.

C.  Claim III

In Claim III, petitioner asserts that the state trial court's imposition of an upper and consecutive term of imprisonment with respect to the burglary of which he was convicted was impermissibly based on judicial fact finding without a waiver of a jury trial on the issue or his admission of the relevant facts.  (<u>See</u> Pet'r's Pet. at p. 9.)  The last reasoned decision addressing this issue was from the California Court of Appeal which, in affirming the judgment of conviction on appeal, stated as follows:

> Defendant contends imposition of the upper term for the burglary
> count contravenes the holding of <u>Cunningham v. California</u> (2007)
> 549 U.S. 270 [166 L.Ed.2d 856].  However, defendant was

---

[10]  "Tactical decisions of trial counsel deserve deference when:  (1) counsel in fact bases trial conduct on strategic considerations; (2) counsel makes an informed decision based upon investigation; and (3) the decision appears reasonable under the circumstances."  <u>Carpenter v. Kernan</u>, No. C 06-7408 JSW (PR), 2009 WL 3681684, at *16 (N.D. Cal. Nov. 2, 2009).  Here, trial counsel's decision to request a curative instructive rather than to move for a mistrial meets this standard and is entitled to the deference accorded it by the state appellate court.

1    sentenced in July 2008, after the Legislature amended Penal Code
     section 1170 to give the trial court discretion to impose the lower,
2    middle, or upper term by stating its reasons for imposing the
     selected term.  Because the upper term is now the statutory
3    maximum term that may be imposed without additional
     factfinding, defendant's Sixth Amendment rights were not violated
4    by the trial court's imposition of the upper term.

5    Defendant contends the imposition of a consecutive term for the
     burglary count also violated his Sixth Amendment rights.  As
6    defendant recognizes, both the United States Supreme Court
     (Oregon v. Ice (2009) 555 U.S. –, [172 L.Ed.2d 517]) and the
7    California Supreme Court (People v. Black (2007) 41 Cal.4th 799,
     820-823) have rejected this argument.  We are bound by these
8    decisions.

9    (Resp't's Answer, Ex. A at 9-10.)

10           In Apprendi v. New Jersey, 530 U.S 466, 490 (2000), the Supreme Court held that

11   "any fact [other than a prior conviction] that increases the penalty for a crime beyond the

12   prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable

13   doubt."  Subsequently, the Supreme Court held "that the 'statutory maximum for Apprendi

14   purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected*

15   *in the jury verdict or admitted by the defendant.*"  Blakely v. Washington, 542 U.S. 296, 303

16   (2004) (emphasis in original).  Thereafter, the Supreme Court found that under California law,

17   the middle, not the upper term, is "the relevant statutory maximum" for Apprendi purposes, and

18   therefore a defendant is entitled to a jury finding before being sentenced to an upper term.

19   Cunningham v. California, 549 U.S. 270, 293 (2007).

20           After the Supreme Court issued its decision in Cunningham, the California

21   legislature amended the state's sentencing scheme.  See People v. Sandoval, 41 Cal.4th 825, 836

22   n.2 (2007).  The amendments became effective on March 30, 2007 and adopted Cunningham's

23   suggestion (see 549 U.S. at 294) that California could comply with the Constitution by allowing

24   trial judges broad discretion in selecting a term within a statutory range which would eliminate

25   the requirement of a judge-found factual finding to impose an upper term.  People v. Wilson, 164

26   Cal. App. 4th 988, 992 (2008).  The amendments to California's sentencing scheme give the trial

1   judge broad discretion under California Penal Code § 1170(b) to select among the lower, middle,

2   and upper terms specified by the applicable statutory provision without stating the ultimate facts

3   deemed to be aggravating or mitigating and without weighing the aggravating or mitigating

4   factors.  See Sandoval, 41 Cal. 4th at 847.  Accordingly, as of March 30, 2007, a trial court in

5   California "is free to base an upper term sentence upon any aggravating circumstance that the

6   court deems significant, subject to specific prohibitions."  41 Cal. 4th at 848.

7            Petitioner's crime, conviction and sentencing all occurred after these amendments

8   to California's sentencing scheme took place on March 30, 2007.  Under those amendments,

9   "imposition of the lower, middle, or upper term is now discretionary and does not depend on the

10  finding of any aggravating factors."  Butler v. Curry, 528 F.3d 624, 652 n. 20 (9th Cir. 2008)

11  (citation omitted).  See also United States v. Booker, 543 U.S. 220, 233 (2005) ("For when a trial

12  judge exercises his discretion to select a specific sentence within a defined range, the defendant

13  has no right to a jury determination of the facts that the judge deems relevant.").  Accordingly,

14  the California Court of Appeal's decision in this case rejecting petitioner's challenge to the upper

15  term sentence he received with respect to his burglary conviction was not contrary to, nor an

16  unreasonable application of clearly established federal law.

17           As noted, petitioner also argues that the sentencing court's imposition of a

18  consecutive sentence on the burglary conviction was improper because it was based on judicial

19  fact-finding without his waiver of his right to a jury trial.  Petitioner's argument is, however,

20  foreclosed by the decision in Oregon v. Ice, 555 U.S. 160 (2009).  In Ice, the issue was whether

21  the Sixth Amendment mandates a jury determination of any fact declared necessary to impose

22  consecutive, rather than concurrent, sentences.  See 555 U.S. at 163.  The Supreme Court

23  declined to extend the holding in Apprendi, and instead concluded that the Sixth Amendment

24  does not prohibit states from assigning to judges rather than to juries the task of finding facts

25  necessary to impose consecutive rather than concurrent sentences.  See id. at 164.  Thus, the

26  California Court of Appeal's decision rejecting petitioner's challenge to the consecutive sentence

he received in this case was also not contrary to, or an unreasonable application of clearly

established federal law.

Accordingly, petitioner is not entitled to federal habeas relief with respect to his

Claim III, in which he alleges sentencing error.

## VI.  LETTER FROM PETITIONER'S MOTHER-IN-LAW

On June 2, 2012, petitioner's mother-in-law, Linda Davidson, sent a letter directly

to this court.  (See Doc. No. 24.)  Ms. Davidson is a non-party in this matter and she may not file

documents on her son's behalf.  Accordingly, the letter will not be considered as part of the

record and will be stricken.[11]

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that the letter filed by petitioner's

mother on June 4, 2012 is stricken.

Furthermore, for the reasons set forth above, IT IS HEREBY RECOMMENDED

that petitioner's petition for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District

Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

one days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

shall be served and filed within fourteen days after service of the objections.  The parties are

advised that failure to file objections within the specified time may waive the right to appeal the

---

[11]   In her brief letter directed to the court, petitioner's mother-in-law appears to assert petitioner's innocence, vouches for his alibi defense and complains both about the manner in which the search of her home was conducted by police and of the representation that petitioner received from his trial counsel.  The court notes that the Supreme Court has stated that federal habeas corpus review under 28 U.S.C. § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits" and "that evidence introduced in federal court has no bearing on" such review.  Cullen v. Pinholster, ___ U.S.___, ___, 131 S. Ct. 1388, 1398, 1400 (2011).

1   District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst,

2   951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of

3   appealability should issue in the event he files an appeal of the judgment in this case.  See Rule

4   11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a

5   certificate of appealability when it enters a final order adverse to the applicant).

6   DATED: May 28, 2013.

7

8   _____

9   DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

10  DAD:dpw
    medl0898.157

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26